### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ARIAS et al, | : | |
| Plaintiffs, | : | CIVIL CASE NO. |
| | : | 3:20-CV-00895 (JCH) |
| v. | : | |
| | : | |
| EAST HARTFORD et al, | : | |
| Defendants. | : | JULY 30, 2021 |
| | : | |

### RULING ON DEFENDANT'S MOTION TO DISMISS (DOC. NO. 23)

## I.   INTRODUCTION

Plaintiffs Gandhy Arias ("Gandhy") and Dillinger Arias ("Dillinger") brought this action on June 29, 2020, alleging six federal and state law claims stemming from an incident involving defendant police officers that occurred on or about November 6, 2017. See Compl. and Jury Demand ("Compl.") (Doc. No. 1).  The Defendants, Sergeant O. Caruso, Officer J. Kaplan, Officer T. Castagna, Officer Meucci, the Town of East Hartford, and Chief of Police Scott M. Sansom moved to dismiss all claims.  See Mot. to Dismiss (Doc. No. 23); Mem. of Law in Supp. of Mot. to Dismiss ("Defs.' Mem.") (Doc. No. 23-1); Defs.' Reply Br. to Pl.'s Opp'n to Def.'s Mot. to Dismiss ("Defs.' Reply") (Doc. No. 38).  Plaintiffs filed a response in opposition to the Motion to Dismiss. See Pls.' Opp'n to Def.'s Mot. to Dismiss ("Pls.' Mem.") (Doc. No. 25).

For the reasons discussed below, the Motion to Dismiss is granted in part and denied in part.

## II.   BACKGROUND

On or about November 6, 2017, at approximately 1:45 AM, plaintiffs were leaving a nightclub in East Hartford when they noticed a physical altercation in progress

between defendant police officers and a group of individuals.  Compl. ¶ 6.  Plaintiffs allege that they noticed "several of the police officers . . . being overly aggressive and abusive, and using excessive force in handling the situation."  Id. at ¶ 7.  Because of this, Dillinger began recording the incident with his phone from approximately 20 to 25 feet away.  Id.

Plaintiffs allege that, when one of the defendant officers noticed that Dillinger was recording the incident, the officer approached them and ordered them to move even further back.  Id. at ¶ 10.  Even though plaintiffs obeyed the order, the officer still pushed them with his hands.  Id.  Another defendant officer allegedly began pushing Dillinger as well.  Id. at 11.  Shortly thereafter, a third defendant officer approached plaintiffs and "violently slapped" the phone out of Dillinger's hand before throwing him "to the ground violently."  Id. at ¶ 12.  The fourth defendant officer then grabbed Gandhy "and threw him violently to the ground" as well, putting his knee and body weight on his back before tightly handcuffing him and throwing him into a police cruiser.  Id. at ¶ 13.  Plaintiffs do not specify which defendant officer did what, and at all points in the Complaint they make allegations against "one of the Defendant police officers," "another one of the Defendant police officers," or the "fourth Defendant police officer" rather than mentioning them by name.  See, e.g., id. at ¶¶ 8, 11, 13.

Gandhy was then taken to the police station.  Id. at ¶ 15.  He alleges that, during the ride in the cruiser, he repeatedly asked the officer to loosen the handcuffs, as his wrists were in pain.  Id. at ¶ 14.  The officer allegedly "ignored his requests" and "told him to shut up" and, when the handcuffs were finally released inside the police station, they left "several marks and pain on his wrists for months."  Id. at ¶¶ 14-15.  Both

2

Gandhy and Dillinger, who was arrested as well, allege that they were then put into cold prison cells for over eight hours.  Id. at ¶¶ 16, 18.  Gandhy was also denied his right to make a phone call to an attorney.  Id. at ¶ 16.  In the morning, plaintiffs were informed that they were arrested for "interfering with police in violation of [CONN. GEN. STAT. § 53a-167a] and breach of peace in the second degree in violation of [CONN. GEN. STAT. § 53a-181]."  Id. at ¶ 20.  Both Gandhy and Dillinger say that at no point did they "obstruct, resist, hinder, endanger[ ] or prevent the Defendant officers from performing their duties," as they were simply filming the altercation.  Id. at ¶ 21.  As a result of this incident, plaintiffs say they "look at police officers differently; almost to the point that they are afraid of them because of their abuse of their power and authority."  Id. at ¶ 19.

Gandhy and Dillinger allege six federal and state law claims in their Complaint. They bring the First Count under section 1983 of title 42 of the United States Code, raising claims for violations of their Fourth and Sixth Amendment rights due to an unreasonable seizure and denial of the right to legal counsel.  Id. at ¶ 23.  The Second Count is also brought pursuant to section 1983, alleging a Monell claim for a "pattern and practice of failing to train and/or discipline [East Hartford Police Department] officers."  Id. at ¶ 29.  The Third Count alleges a violation of the Equal Protection clause due to plaintiffs being "treated in a discriminatory and unconstitutional manner . . . based on race."  Id. at ¶ 31.

The final three claims are brought under state law.  Count Four alleges discrimination based upon race in violation of Article First, Section 1 and Article First, Section 20 of the Connecticut Constitution.  Id. at 33.  Count Five alleges intentional

infliction of emotional distress, and Count Six negligent infliction of emotional distress. Id. at ¶¶ 35, 39.

## III.   STANDARD OF REVIEW

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.  Reviewing a motion to dismiss under Rule 12(b)(6), the court liberally construes the claims, accepts the factual allegations in a Complaint as true, and draws all reasonable inferences in the non-movant's favor.  See La Liberte v. Reid, 966 F.3d 79, 85 (2d Cir. 2020).  However, the court does not credit legal conclusions or "[t]hreadbare recitals of the elements of a cause of action."  Iqbal, 556 U.S. at 678.[1]

## IV.   DISCUSSION

Defendants have moved to dismiss all claims pursuant to Rule 12(b)(6).  As an initial matter, they argue that the two section 1983 claims in Count One against the four

---

[1] In their Memorandum, plaintiffs incorrectly state – multiple times – that the standard for a motion to dismiss is governed by Conley v. Gibson, 355 U.S. 41 (1957).  Pls.' Mem. at 4, 10.  Of course, the Supreme Court abrogated Conley in Twombly and Iqbal.  Twombly, 550 U.S. 544; Iqbal, 556 U.S. 662. The court uses the correct standard here.

Given that Iqbal was decided more than 12 years ago, it is wholly ineffective of plaintiff's counsel to cite Conley and its standard to this court and, in this court's view, violates counsel's duty to the court. See, e.g., Fed. R. Civ. P. 11(b) (requiring counsel, in presenting a paper to the court, to "certify[y] that to the best of [counsel's] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . [the] legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law") (emphasis added).

defendant police officers in their individual capacities should be dismissed because, by "fail[ing] to specify [the] unconstitutional act[s] each [individual] defendant is alleged to have committed," and instead only referring broadly to acts committed by "'the defendant officers'," plaintiffs have "not sufficiently allege[d] personal involvement of any of the defendant officers in any alleged Constitutional violation."[2]  Defs.' Mem. at 23. They also argue that, with the exception of the Fourth Amendment claim, plaintiffs have failed to state a plausible claim for relief against any of the defendants.  Id. at 7-21. Finally, the individual defendants assert that they are entitled to qualified immunity as to each claim set forth in the first three counts.  Id. at 23-25.  The court addresses each of these arguments in the order presented here.

     A.    <u>Sufficient Personal Involvement</u>

     "A plaintiff seeking relief under § 1983 must allege facts showing the defendants' personal involvement."  <u>Gonzalez v. Yepes</u>, No. 19-CV-267, 2019 WL 2603533, at *7 (D. Conn. June 25, 2019) (citing <u>Spavone v. N.Y. State Dep't of Corr. Serv.</u>, 719 F.3d 127, 135 (2d Cir. 2013)).  Pleadings that (1) "fail[ ] to differentiate among the defendants, alleging instead violations by 'the defendants';" (2) "fail[ ] to identify which defendants were alleged to be responsible for which alleged violations," or; (3) "provide no factual basis to distinguish [the defendants'] conduct" may not meet this standard

---

[2] It is not entirely clear from the defendants' Memorandum whether they also seek to make this argument as to defendant Sansom as well.  <u>See</u> Defs.' Mem. at 21-23.  The heading of the relevant section states that "[p]laintiffs have failed to allege sufficient personal involvement by <u>any</u> of the defendants, in <u>any</u> alleged constitutional violation."  <u>Id.</u> at 21 (emphasis added).  Yet the arguments brought forth in that section pertain only to the defendant officers, not Chief of Police Sansom.  <u>See</u> <u>id.</u> at 23 ("plaintiffs do not sufficiently allege personal involvement of any of the <u>defendant officers</u> . . . [a]s such, the <u>defendant officers</u> are entitled to dismissal of any claims directed towards them in their individual capacities" (emphasis added).  The court therefore addresses this argument only as it relates to the defendant officers.

and are subject to dismissal pursuant to Rule 12(b)(6).  Atuahene v. City of Hartford, 10

F. App'x 33, 34 (2d Cir. 2001); see also Gonzalez, 2019 WL 2603533, at *7 ("[a]s a

corollary of the personal involvement requirement, complaints that . . . fail to

differentiate as to which defendant was involved in the alleged unlawful conduct are

insufficient to state a claim.") (internal quotations and citations omitted).  Such pleadings

are dismissed under Rule 12(b)(6) because they fail to meet the requirement in Federal

Rule of Civil Procedure 8 that "a complaint give each defendant fair notice of what the

plaintiff's claim is and the ground upon which it rests."  Atuahene, 10 F. App'x at 34

(internal quotations and citations omitted).

When a Complaint fails to differentiate between defendants' conduct, courts

generally apply the "group pleading" doctrine to determine if dismissal is warranted.[3]  In

Atuahene, the Second Circuit affirmed the District Court's dismissal of a pro se prisoner

---

[3] Most of the cases cited by defendants in their Memorandum are not fully applicable here.  While they do stand for the proposition that a plaintiff must allege facts showing a defendant's sufficient personal involvement, they involve fact patterns where a plaintiff brought a claim against a higher-ranking official overseeing the defendants who allegedly violated the plaintiff's constitutional rights, but the higher-ranking official was not personally involved in the violation.  For example, in Sealey v. Giltner, 116 F.3d 47 (2d Cir. 1997), the plaintiff brought, inter alia, a section 1983 claim against the Department of Corrections Commissioner.  Because he did not allege any personal involvement on the part of the Commissioner, the Second Circuit affirmed the District Court's dismissal of the claim.  Sealey, 116 F.3d at 51; see also Tangreti v. Bachman, 983 F.3d 609, 618 (2d Cir. 2020) (not cited by defendants but clarifying the standard in Sealy by holding that "after Iqbal, there is no special rule for supervisory liability," and that in a section 1983 claim a plaintiff must plead "that each Government-official defendant, through the official's own actions, has violated the Constitution") (internal citations omitted).  Several other cases cited by defendants also fall into this category.  See, e.g., Al-Jundi v. Estate of Rockefeller, 885 F.2d 1060, 1065 (2d Cir. 1989) (holding that Governor Rockefeller's involvement in a police action to quell a prison riot was not sufficient to establish a claim under section 1983); Johnson v. Barney, 360 F. App'x 199 (2d Cir. 2010) (claims against a prison superintendent "failed as a matter of law because [plaintiff] failed to allege sufficient personal involvement on [the superintendent's] part").

These cases are distinguishable from the case at hand.  Here, plaintiffs have alleged that the defendant police officers were physically present and personally involved.  They have failed, however, to specify which defendant was responsible for which actions by referring only to individual "Defendant police officers" rather than the officers by name.  As such, the court analyzes the defendants' argument under the applicable "group pleading" doctrine discussed below, which includes the final case cited by defendants.  See Defs.' Mem. at 23 (citing Marcilis v. Redford Township, No. 09-11624, 2010 WL 11703697 (E.D. Mich. Aug. 16, 2010), aff'd 693 F.3d 589 (6th Cir. 2012)).

Complaint because the plaintiff "fail[ed] to identify which defendants were alleged to be responsible for which alleged violations."  <u>Atuahene</u>, 10 F. App'x at 34.  That complaint initially made allegations against "the defendants," and the plaintiff was given two opportunities to amend his Complaint.  <u>Id.</u>  After he merely replaced the references to "'the defendants' with the names of all of the defendants," the District Court properly dismissed the Complaint.  <u>Id.</u>

Similarly, the Tenth Circuit has cited <u>Atuahene</u> to hold that, generally, a "Complaint's use of either the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom" warrants dismissal because "it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed."  <u>Robbins v. Oklahoma</u>, 519 F.3d 1242, 1250 (10th Cir. 2008).  The <u>Robbins</u> court "placed great importance on the need for a plaintiff to differentiate between the actions of each individual defendant and the actions of the group as a whole.  This [was] because the purposes of plausibility, notice and gatekeeping, are best served by requiring plaintiffs to directly link an actual individual with the allegedly unconstitutional acts of each defendant.  When a plaintiff fails to isolate the allegedly unconstitutional acts of each defendant, adequate notice is not provided to each defendant."  <u>VanZandt v. Oklahoma Dept. of Human Services</u>, 276 F. App'x 843, 849 (10th Cir. 2008) (internal quotations and citations omitted).  In other words, according to the Tenth Circuit, "it is particularly important . . . that the complaint make clear exactly <u>who</u> is alleged to have done <u>what</u> to <u>whom</u>, to provide each individual with fair notice as to the basis of the claims against him or her."  <u>Robbins</u>, 519 F.3d at 1250 (emphasis in original) (citing <u>Twombly</u>, 550

U.S.at 565 n. 10 (disapproving of a pleading that "mentioned no specific . . . person involved in the alleged [conduct])); see also Marcilis v. Township of Redford, 693 F.3d 589, 596 (6th Cir. 2012) (citing Robbins and Atuahene to affirm the dismissal of a Complaint when it made "only categorical references to 'Defendants'" rather than specify "facts that demonstrate what each defendant did to violate the asserted constitutional right") (internal quotations and citations omitted) (emphasis in original).

Still, "[c]ontext matters in notice pleading," and a survey of the case law interpreting both Atuahene and the "group pleading" doctrine more broadly shows that these rules are fact-dependent and far from absolute. Id. at 1249.  For instance, motions to dismiss for improper "group pleading" fail when, even though the plaintiff refers to "defendants" generally rather than a particular defendant individually, it is sufficiently clear that "in the particular factual context of [the] case . . . the complaint furnishes adequate notice for initial pleading purposes of plaintiff's claim of wrongdoing." Bruce Kirby, Inc. v. Quarter Moon, Inc., No. 17-CV-1389, 2018 WL 3614120, at *2 (D. Conn. July 27, 2018).  In Bruce Kirby, the claim "involve[d] the posting of allegedly infringing information on a website that [was] not peculiarly and facially traceable to any one defendant." Id. at *1.  Despite the fact that the Complaint "often refer[red] to all four defendants collectively," it was allowed to proceed because, given the specific circumstances of the case and drawing all reasonable inferences in the plaintiff's favor, there was an understandable explanation for why the Complaint was not more particularized.  See also New York Am. Water Co., Inc. v. Dow Chemical Co., No. 19-CV-2150, No. 19-CV-5632, 2020 WL 9427226, at *4 (E.D.N.Y. Dec. 11, 2020) (noting that the pleading did group defendants together, but allowing it to proceed because

"plaintiffs make clear that identical claims are [being] asserted against each defendant"); Rosen v. Prudential Ret. Ins. and Annuity Co., No. 15-CV-1839, 2016 WL 7494320, at *12 (D. Conn. Dec. 30, 2016) (holding that plaintiffs had "sufficiently specified which claims are being brought against [the defendant], as well as the basic factual allegations associated with those claims" and allowing the claim to proceed despite defendants' argument that the Complaint had impermissibly grouped "two defendants together without distinguishing their conduct"); Gao v. JPMorgan Chase & Co., No. 14-CV-4281, 2015 WL 3606308, at *6 (S.D.N.Y. June 9, 2015) (rejecting a "group pleading" argument because the "claims against [the defendant], and the grounds upon which they rest, [were] clear from the complaint").

The "particular factual context of [the] case" is even more important when pleadings allege police misconduct. Bruce Kirby 2018 WL 3614120, at *2.  In Messina v. Mazzeo, 854 F.Supp. 116 (E.D.N.Y. 1994), the court assessed a fact pattern uncannily similar to the one here.  In that case the plaintiff also brought a section 1983 claim, alleging that seven named police officers had violated his Fourth Amendment rights.  The plaintiff referred to the individual defendants as "defendant Police Officers" in the Complaint, alleging that they "used excessive force in arresting [him] without describing what role each individual defendant played in the alleged constitutional violations."  Messina, 854 F.Supp. at 125.  Despite the lack of specificity as to which defendant did what, the court still declined to dismiss the claim.  It reasoned that, because the plaintiff had specifically alleged that each individual officer was personally involved in the use of excessive force that gave rise to the violation, he had met the "constitutional[ ] imperative that defendants are put on notice as to the nature of the

9

allegations against them." Id. at 126.  This remained true even if he did not "set out [each] defendant's precise role in the injurious conduct." Id.  In reaching this conclusion, the court placed a special emphasis on the circumstances surrounding the incident.  Since the plaintiff was alleging a use of excessive force during an arrest, "[i]t would be asking too much for an arrestee to remember and plead the role each of several police officer played in [this] alleged instance of police brutality." Id.

To be sure, Messina was decided before both Atuahene and Twombly/Iqbal. Still, the court finds its reasoning persuasive.  As discussed above, courts in this Circuit have looked to the "particular factual context of [the] case" when applying Atuahene. And it is equally true that they have continued to cite Messina approvingly under the Twombly/Iqbal standard.  For example, in Celestin v. Angeletta, No. 19-CV-1887, 2021 WL 1062344, at *5 (S.D.N.Y. Mar. 19, 2021), the court analyzed a pleading from a pretrial detainee alleging that he was assaulted by several officers.  As was the case in Messina, the plaintiff named each of the officers as defendants in his Complaint but "[did] not specifically mention the names of the . . . officers in his description of the assault." Celestin, 2021 WL 1062344 at *5.  The court "read [the Complaint] liberally" and relied entirely on Messina to hold that he had plausibly alleged that each of the officers had violated his rights. Id.; see also Coppola v. Town of Plattekill, No. 17-CV-1032, 2018 WL 1441306, at *5 (N.D.N.Y. Mar. 22, 2018) (citing and quoting Messina to hold that plaintiffs had adequately pleaded allegations against "officers" for their actions when it was clear which two officers on her property participated in the action); but see Rosado v. Village of Goshen, No. 7:16-CV-6916, 2019 WL 1437522, at *7 (S.D.N.Y.

Mar. 31, 2019) (dismissing a Fourth Amendment unlawful seizure <u>Bivens</u> claim for improper generalized pleadings as to five FBI defendants where the plaintiff "plead[ed] generalized statements about Defendants as a group").[4]

Here, plaintiffs have brought a section 1983 claim against the four named defendant officers.  They allege that the defendant officers violated their Fourth and Sixth Amendment rights by assaulting and arresting them because they were filming an incident involving the officers, and by subsequently denying them their right to counsel. Compl. at ¶¶ 10-16, 18.  Plaintiffs allege that each of the four officers participated in the assault and the arrest, although they do not specify which officer, for instance, "violently slapped [Dillinger's] hand, causing him to drop his phone" or which officer "grabbed Gandhy . . . and threw him violently to the ground." <u>Id.</u> at ¶¶ 12-13.  Nor do they specify which officer or officers allegedly brought the plaintiffs to the police station, put them in a cold prison cell, and denied them their right to counsel.  Instead, they state only that

---

[4] Other cases where courts have dismissed claims involving alleged police misconduct for improper "group pleading" are distinguishable here, as they generally involve situations where either: (1) the plaintiff cannot name the officers involved in the incident so brings claims against John and Jane Does, or (2) the claims are brought in a manner that makes it impossible to distinguish which defendants were involved in which specific incidents.

For examples of the first category of cases, <u>see</u> <u>Edwards v. City of New York</u>, No. 07-CV-5286, 2009 WL 1910740, at *3 (denying a Motion to Amend the Complaint that originally included claims against "John Does 1-5" when plaintiffs claimed "that police officers illegally entered their home" and that "the warrant to search their home was granted based on an affidavit containing false information," but the Amended Complaint "[did] not specify which officers took part in which of these actions"); <u>Johnson v. City of New York</u>, No. 1:15-CV-8195, 2017 WL 2312924 at *10 (S.D.N.Y. May 26, 2017) (dismissing a false arrest claim in a broader action against two named defendant officers and 10 John and Jane Does when allegations relevant to the false arrest claim were made only against "defendants").

For examples of the second category, <u>see</u> <u>Marcilis v. Redford Township</u>, 2010 WL 11703697, at 2-4 (dismissing claims against two DEA defendants who were operating as part of task force in partnership with a local Police Department when DEA defendants were "noted in the complaint only to identify them as such, [but were then] otherwise lumped in with the remaining defendants on all charges"); <u>Howard v. City of Belthlehem, Bureau of Police Dept.</u>, No. 90-0233, 1990 WL 56515, at *1-2 (E.D. Pa. May 1, 1990) (finding a pleading insufficient and granting leave to file an amended complaint when plaintiff had brought an action against five individual police officers but alleged in count one only actions by "Officer Number 1" and "Police Number 2").

"[o]ne of the Defendant officers . . . another of the Defendant officers . . . [a]nother of the Defendant officers . . . [and a] fourth Defendant officer" assaulted them and that at least one of those officers brought the plaintiffs to the station.  Id. at ¶¶ 10-13.

Defendants argue that this is insufficient to allege the personal involvement of any of the defendant officers.  Defs.' Mem. at 21-23. Plaintiffs, unhelpfully, cite no relevant cases and do not respond in a substantive manner, saying only that defendants' argument is "meritless."  Pls.' Mem. at 12.

Contrary to what plaintiffs think, the court finds that defendants' argument does have merit, and that the issue presented here is a close question of law.  Nevertheless, it is persuaded by the case law discussed above and the particular context of plaintiffs' claims.  Dillinger and Gandhy allege, in essence, that they were attacked by four officers, violently thrown to the ground, and thrown into police cruisers, all within a short period of time.  Gandhy also alleges that, during the ride to the police station, he was "ignored" by the officer driving the cruiser and was focused on the "extreme pain and . . . numbness" being caused by the tight handcuffs around his wrist.  Compl. at ¶ 14. These are exactly the kinds of circumstances where it may be unreasonable to expect "an arrestee to remember and plead the role each of several police officer played in an alleged instance of police brutality."  Messina, 854 F.Supp. at 126.

For these reasons, the Motion to Dismiss is denied as to defendants' argument that the section 1983 claims against the defendant officers in their individual capacities should be dismissed for failure to allege sufficient personal involvement by any of the officers.

C.      Failure to State a Claim

Defendants argue that, with the exception of the section 1983 claim alleging a violation of the Fourth Amendment, plaintiffs have failed to state any plausible claim upon which relief can be granted.  Defs.' Mem. at 7-21.  The court addresses each claim in turn.

1.      Section 1983 Sixth Amendment Claim

In the First Count of their Complaint, plaintiffs allege that their Sixth Amendment rights were violated when the defendant officers "prevent[ed] them from exercising their right to legal counsel by denying them the right to make a phone call" during the more than eight hour period when they were locked in prison cells after their arrest.  Compl. at ¶ 23.

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  U.S. Const. amend. VI (emphasis added).  As the Supreme Court has recognized, "[t]he Sixth Amendment right of the 'accused' to assistance of counsel in 'all criminal prosecutions' is limited by its terms: it does not attach until a prosecution is commenced."  U.S. v. Stein, 541 F.3d 130, 152 (2d Cir. 2008) (internal quotations omitted) (quoting Rothgery v. Gillespie Cnty., 554 U.S. 191, 198 (2008).  The Supreme Court has "firmly established that a person's Sixth . . . Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him . . . whether by way of formal charge, preliminary hearing, indictment, information, or arraignment."  Kirby v. Illinois, 406 U.S. 682, 688-89 (1972).  The purpose of this standard "is not mere formalism, but a recognition of the point at which the government

13

has committed itself to prosecute."  Stein, 541 F.3d at 152 (internal quotations omitted)
(quoting Kirby, 406 U.S. at 689).

Determining when the Sixth Amendment right to counsel attaches requires courts
to look not only at the state law definition of the "commencement" of criminal
proceedings, but also "the substantive nature of . . . [the] particular . . . criminal-
procedural moment [in question] . . . to determine whether the State has formally
committed itself to prosecute to such an extent that 'adversary judicial criminal
proceedings' have been initiated."  U.S. v. Reed, 756 F.3d 184, 188 (2d Cir. 2014)
(citing Rothgery, 554 U.S. at 198).

Here, neither establishes that the plaintiffs' Sixth Amendment right to counsel
was violated.  The Supreme Court of Connecticut has mirrored the United States
Supreme Court in holding that criminal proceedings "commence" with the initiation of
adversary judicial proceedings.  See, e.g., Gonzalez v. Comm'r of Corr., 308 Conn. 463,
471-75 (2013); see also St. Louis v. Erfe, No. 3:12-CV-356, 2016 WL 1465323, at *8 (D.
Conn. Apr. 14, 2016).  The plaintiffs have not made any allegations in their Complaint
that criminal proceedings – including formal charges, preliminary hearings, indictments,
information, or arraignments – have been initiated.  They allege only that they were
arrested and, after spending more than eight hours in prison, told that they had
"interfer[ed] with police in violation of [CONN. GEN. STAT. § 53a-167a] and breach[ed the]
peace in the second degree in violation of [CONN. GEN. STAT. § 53a-181]."  Compl. at ¶
20.  They do not allege that they were held longer, nor that the State has initiated
criminal proceedings against them pursuant to those violations and that they were
denied an attorney during those proceedings.

14

Indeed, this court is bound by clear precedent establishing that the Sixth Amendment right to counsel does not attach at the point of arrest.  See, e.g., Kirby, 406 U.S. 682 (finding no Sixth Amendment violation when plaintiff was not afforded an attorney during a "showup" that took place after his arrest but before he had been indicted or formally charged) (emphasis added); see also State v. Vitale, 190 Conn. 219, 232 (1983) ("[t]he view that [an] arrest itself constitutes the initiation of [adversary judicial criminal proceedings] was rejected in Kirby"); U.S. v. Bing Yi Chen, 433 F. App'x 14, 15 (2d Cir. 2011) ("[t]he Sixth Amendment right to counsel attaches upon indictment; it does not arise at the time of arrest") (internal quotations and citations omitted); U.S. v. Moore, No. 3:03-CR-178, 2007 WL 708789, at *6 (D. Conn. Feb. 20, 2007) ("the Second Circuit has held that the Sixth Amendment right to counsel does not arise on an arrest") (citing United States v. Duvall, 537 F.2d 15 (2d Cir. 1976)).

Accordingly, the Motion to Dismiss is granted as to the plaintiffs' section 1983 claim alleging a violation of their Sixth Amendment right to counsel.  The court dismisses the claim as to all defendants, without prejudice to replead if plaintiffs can plausibly allege facts to support a Sixth Amendment violation.

### 2.    Monell Claim

Plaintiffs bring Count Two of the Complaint pursuant to section 1983, alleging that Chief Sansom and the Town of East Hartford had established a "pattern and practice of failing to train and/or discipline [East Hartford Police Department] officers."

To properly bring such a claim, commonly known as a Monell claim, plaintiffs must allege sufficient facts to plausibly: (1) "establish that [they] suffered a constitutional violation," and; (2) establish "that the violation resulted from an identified municipal 'policy,' 'custom,' or 'practice.'"  Parker v. City of Long Beach, 563 Fed. App'x 39, 41 (2d

15

Cir. 2014) (citing <u>Monell v. Dep't. of Soc. Servs.</u>, 436 U.S. 658, 690-91 (1978)).  "<u>Monell</u>

also recognizes liability where a municipality's failure to train its employees . . .

amount[s] to deliberate indifference to the rights of persons with whom the untrained

employees come into contact."  <u>Parker</u>, 563 F. App'x at 41 (quoting <u>Connick v.</u>

<u>Thompson</u>, 563 U.S. 51, 61 (2011).

A policy, custom, or practice "need not be memorialized in a specific rule or

regulation."  <u>Kern v. City of Rochester</u>, 93 F.3d 38, 44 (2d Cir. 1996) (internal quotations

and citation omitted).  Nor must it have "received formal approval through the body's

official decisionmaking channels." <u>Monell</u>, 436 U.S. at 691.  A <u>Monell</u> claim may still

succeed when the constitutional violations are so "persistent and widespread . . . so

permanent and well settled" that they "constitute a 'custom or usage' with the force of

law."  <u>Sorlucco v. New York City Police Dept.</u>, 971 F.2d 864, 870-71 (2d Cir. 1992)

(internal quotations and citations omitted).

Setting aside for now the question of whether plaintiffs have suffered a

constitutional violation, their Complaint fails to allege that any such violation was due to

a policy, custom, or practice of the municipality.  Indeed, most of the allegations

underpinning plaintiffs' <u>Monell</u> claim are specific to the <u>Hartford</u> police department,

which is not a defendant here.  <u>See</u> Compl. at ¶¶ 26-28.  Plaintiffs make much of the

fact that the City of Hartford and the Hartford Police Department were subject to a

federal consent decree, and that Chief Sansom was an officer and later Deputy Chief in

that department.  <u>Id.</u> at ¶¶ 26-28.  But they say little about the East Hartford Police

Department, cabining their conclusory allegations about it to a single paragraph in the

Complaint.  <u>Id.</u> at ¶ 29.  Instead, plaintiffs appear to ask this court to impute the past

violations of the Hartford Police Department onto Chief Sansom himself; carry those violations through his person to the East Hartford Police Department; and hold the Town of East Hartford liable simply because its current Police Chief used to work for and hold a leadership position in another department that was subject to a consent decree.  The court is not aware of any case law supporting such an attenuated theory of Monell liability, nor have plaintiffs cited any.

For these reasons, the Motion to Dismiss is granted as to Count Two of the plaintiffs' Complaint.  The court dismisses Count Two as to both defendants, without prejudice to replead if plaintiffs can allege facts supporting a Monell claim.

### 3.    Equal Protection Claim

Count Three of the Complaint alleges a violation of the Equal Protection Clause of the Fourteenth Amendment "in that [plaintiffs] were treated in [a] discriminatory and unconstitutional manner by the Defendant officers . . . based upon race." Id. at ¶ 31.

"[T]he Equal Protection Clause may be violated by selective enforcement or selective adverse treatment.  To state such a claim, a plaintiff must allege (1) that he or she was treated differently from other similarly situated individuals, and (2) that the treatment was based on impermissible considerations such as [inter alia] race."  Bush v. City of Utica, N.Y., 558 F. App'x 131, 134 (2d Cir. 2014); see also Brown v. City of Oneonta, New York, 221 F.3d 329 (2d Cir. 2000) (holding that residents suing a municipality alleging adverse interactions with police based on race had failed to sufficiently allege discriminatory intent); Brisbane v. Milano, 443 F. App'x 593 (2d Cir. 2011) (using the same standard as Bush and dismissing an Equal Protection claim where plaintiffs alleged they were selectively investigated due to their race but were not similarly situated to the white suspects in the case).  The Equal Protection Clause is

also violated if law enforcement "initiat[es] an investigation of a person based solely upon that person's race." <u>Brown</u>, 221 F.3d at 338 (citing <u>United States v. Avery</u>, 137 F.3d 343 (6th Cir. 1997).

Plaintiffs do not meet this standard here.  Their Complaint is entirely devoid of allegations that could support a reasonable inference that the defendant officers treated plaintiffs differently because of their race.  Indeed, the only time race is even mentioned before Count Three is in the count related to the <u>Monell</u> claim, and there it is about the <u>Hartford</u> Police Department's "pattern and practice of violating the rights of Black and Hispanic citizens."  Compl. at ¶ 27.  At no point in the Complaint do plaintiffs state their own race;[5] allege (or even imply) that defendant officers treated them differently or discriminated against them due to their race; or put forth anything but a conclusory allegation that their Fourteenth Amendment rights were violated.

Accordingly, the Motion to Dismiss is granted as to Count Three of the plaintiffs' Complaint.  The court dismisses Count Three as to all defendants, without prejudice to replead if plaintiffs can allege facts supporting an Equal Protection claim.

---

[5] In their Opposition to Defendants' Motion to Dismiss, plaintiffs appear to have attempted to bring forth additional allegations regarding the race of the plaintiffs and the defendant officers.  <u>See</u> Pls.' Mem. at 8 (stating that "[i]n this case, the Plaintiffs as people of color are in one of the protected classes for purposes of the Equal Protection Clause"); <u>id.</u> at 10 ("[i]t is our assertion that these officers used their authority and white privilege to treat the Plaintiffs in this fashion").

Of course, it is well established that in reviewing the Motion to Dismiss, the court in this instance may consider only the allegations in the complaint.  <u>See</u> <u>Roth v. CitiMortgage Inc.</u>, 756 F.3d 178, 180 (2d Cir. 2014).  Plaintiffs may not amend their Complaint or add additional factual allegations through their memorandum in opposition to the Motion to Dismiss.  <u>Tyus v. Newton</u>, No. 3:13-cv-1486, 2015 WL 1471643, at *5 (D. Conn. Mar. 31, 2015) ("plaintiff may not . . . amend the amended complaint in a memorandum in opposition to a motion to dismiss").  Thus, the court cannot consider this additional information in ruling on the Motion to Dismiss.

5.      Discrimination Based on Race in Violation of Article First, § 20 and
        Article First, § 1 of the Connecticut Constitution

Plaintiffs next bring state law claims arising from the same incident.  First, they

allege that defendants' conduct "constitutes discrimination based upon race in violation

of Article First, § 1 and Article First, § 20" of the Connecticut Constitution.  Id. at ¶ 33.  In

their opposition to the Motion to Dismiss, plaintiffs appear to abandon their claim related

to Article First, § 1, and concede that Article First, § 20 "does not permit the Plaintiffs to

bring an action for monetary damages."  Pls.' Mem. at 9; see also United States v.

Dorio, 483 F.Supp.3d 145, 158 (D. Conn. 2020) ("neither this court nor the Connecticut

Supreme court has ever recognized a private cause of action under Article First, § 20 of

the Connecticut Constitution") (internal quotations and citations omitted).[6]

Plaintiffs argue, however, that the bar to monetary damages "does not preclude

the granting of equitable relief," and urge the court to, "[f]or example . . . in equity order

that the [East Hartford Police Department] and Chief Sansom undergo training to

address their failure to train or discipline" police officers.  Pls.' Mem. at 9.  They cite no

case law in support of their position.

For the reasons stated above in the Monell and Equal Protection sections, the

court dismisses these claims.  The Supreme Court of Connecticut "has many times

noted that the equal protection clauses of the state and federal constitutions have a like

---

[6] The court notes that, in 2020, the Connecticut legislature appears to have created such a cause of action in Public Act Number 20-1, "An Act Concerning Police Accountability."  See CONN. GEN. STAT. § 52-571k (providing that "[n]o police officer . . . shall deprive any person or class of persons of the equal protection of the laws of this state . . . including, without limitation, the protections, privileges and immunities guaranteed under article first of the Constitution of the state," and empowering "any person aggrieved by a violation [of this section to] . . . bring a civil action for equitable relief of damages in the [Connecticut] Superior Court").  However, this provision is only "applicable to any cause of action arising from an incident committed on or after July 1, 2021."  C.G.S.A. July Sp. Sess., P.A. 20-1, § 41.

meaning."  State v. Long, 268 Conn. 508, 540 (2004) (internal quotations and citations omitted).  Here, plaintiffs have not alleged any policy, custom, or practice on the part of the East Hartford Police Department demonstrating a pattern of abuse.  Nor have they alleged any facts indicating that the officers in this present case treated plaintiffs differently because of their race.  Absent such allegations, the claim for equitable relief pursuant to Article First, § 20 of the Connecticut Constitution is also dismissed.

The Motion to Dismiss is therefore granted as to Count Four of the plaintiffs' Complaint.  Because plaintiffs have abandoned their Article First, § 1 claim, the court dismisses that claim against all defendants with prejudice.  Plaintiffs' Article First, § 20 claim for equitable relief is dismissed against all defendants without prejudice to replead.

### 6.   Intentional Infliction of Emotional Distress

Count Five of plaintiffs' Complaint alleges a claim against the defendant officers for intentional infliction of emotional distress.

To state such a claim, plaintiffs must allege: "(1) that the [defendants] intended to inflict emotional distress or that [they] knew or should have known that emotional distress was the likely result of [their] conduct; (2) that the conduct was extreme and outrageous; (3) that the [defendants'] conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff[s] was severe."  Sepega v. DeLaura, 326 Conn. 788, 800 n.6 (2017) (internal quotations and citations omitted); see also Chase v. Nodine's Smokehouse, Inc., 360 F.Supp.3d 98, 118 (D. Conn. 2019) (quoting the same standard but citing Petyan v. Ellis, 200 Conn. 243, 253 (1986)). Meeting the "extreme and outrageous" prong of the test is a high standard.  It "requires conduct that . . . goes beyond all possible bounds of decency, is regarded as atrocious,

is utterly intolerable in a civilized society, and is of a nature that is especially calculated to cause, and does cause, mental distress of a very serious kind." Chase, 360 F.Supp.3d at 118 (internal quotations and citations omitted).

Defendants rely on four cases to argue that this standard is not met. In Appleton v. Board of Educ. of Town of Stonington, 254 Conn. 205 (2000), the court held that defendants' conduct was not "extreme and outrageous." The plaintiff in that case was a teacher, who alleged the defendants had made condescending remarks to her in front of colleagues, questioned her ability to read, told her daughter she "had been acting differently," and had the police escort her out of the building. Appleton, 254 Conn. at 211. She was also subjected to two psychiatric examinations, suspended, and ultimately forced to resign. Id. Although the court acknowledged that the experience "may very well have been distressing and hurtful," they held that it did not "constitute extreme and outrageous conduct within the meaning of the [court's] precedents." Id.

In Carrol v. Allstate Ins. Co., 262 Conn. 433 (2003), the Supreme Court of Connecticut also found that the "extreme and outrageous" standard had not been met in a case where the plaintiff brought a claim for intentional infliction of emotional distress against his insurance company. The claim arose from the defendant's conduct during an insurance investigation. Despite evidence that the investigator "might have been influenced in part by the fact that the plaintiff was African-American," and the "border[line] . . . harassment" the plaintiff suffered during the investigation, the court still held that "the evidence was not sufficient for a jury reasonably to conclude that the defendant's conduct in its fire investigation was extreme and outrageous." Id. at 441, 443-44.

21

Finally, defendants cite <u>Winter v. Northrop</u>, No. 3:06-CV-216, 2008 WL 410428 (D. Conn. Feb. 12, 2008), and <u>Blalock v. Bender</u>, No. 3:04-CV-1519, 2006 WL 1582217 (D. Conn. June 1, 2006), for the proposition that "a defendant officer's arrest of a plaintiff, <u>without more</u>, is neither extreme nor outrageous where the defendant had probable cause to arrest the plaintiff. Defs.' Mem. at 18 (emphasis added). Defendants argue that these cases, taken together, militate towards the conclusion that plaintiffs have failed to state a claim for intentional infliction of emotional distress.

Gandhy and Dillinger disagree. They argue that "the denial of insurance coverage for a fire loss, or the subjecting of a teacher publicly to condescending comments and escorting her off the property pale by comparison to the physical violent treatment of the Plaintiffs." Pls.' Mem. at 9-10. Defendants "thr[ew] them violently to the ground, handcuff[ed] them and jail[ed] them for over eight hours in cold cells," simply because they had filmed the altercation involving the officers outside the nightclub. <u>Id.</u> at 10.

Here, the court agrees with the plaintiffs and finds that their allegations are sufficient to state a claim for intentional infliction of emotional distress against the officers. As an initial matter, another Judge in this district has already ruled on a Motion to Dismiss an intentional infliction of emotional distress claim that had some factual similarities to the allegations here, where defendants also relied primarily on <u>Appleton</u> and <u>Carrol</u> to argue their case. In <u>Chase</u>, 360 F.Supp.3d at 118-19, the plaintiff alleged that the municipal police did not take her claims of sexual assault seriously, treated her instead as if she was the assailant, and knowingly misrepresenting facts about her situation in a sworn affidavit to obtain a warrant and arrest her. In denying the Motion,

Judge Bryant held that "[t]he circumstances in Appleton [were] entirely distinct" and that "the facts at issue in Carrol are not analogous to those at hand."  Chase, 360 F.Supp.3d at 118-19.  Because the plaintiff in Chase had alleged "much more extreme conduct" then the plaintiffs had in those cases, her claim was allowed to proceed.  Id. at 119.

Winter and Blalock are also distinguishable.  In both those cases, the courts held that "participation in [a plaintiff's] arrest[ ], based upon probable cause, . . . does not constitute intentional infliction of emotional distress."  Winter, 2008 WL 410428, at *7; Blalock, 2006 WL 1582217, at *7 ("[d]efendant has shown that he had probable cause to arrest [p]laintiff"); see also Ravalese v. Town of East Hartford, No:16-CV-1642, 2019 WL 2491657, at *14-15 (D. Conn. June 14, 2019) (noting that "probable cause may not always preclude intentional infliction of emotional distress liability, where other aggravating factors that may constitute extreme and outrageous conduct are present" but holding that "the mere fact of the arrest [ ] – without more – cannot sustain an intentional infliction of emotional distress claim").

Here, plaintiffs' allegations go well beyond mere arrest.  They allege that they were attacked, arrested, and thrown in a cold prison cell just for filming an incident of police brutality.  As Judge Bryant acknowledged in Chase, they have "allege[d] more than the simple fact of [their] arrest; [they] allege[ ] improper conduct leading up to [the] arrest which caused [them] significant emotional distress."  Indeed, plaintiffs' claims involve an additional element of physical violence on the part of the arresting officers that was not present in Chase.

Moreover, additional case law supports the court's holding here that allegations of police misconduct leading up to or during an arrest can support a claim for intentional

infliction of emotional distress, especially when the officers lack probable cause for making the arrest in the first place.  In Lawson v. Hilderbrand, 88 F.Supp.3d 84, 101-02 (D. Conn. 2015), rev'd on other grounds, 642 F. App'x 34 (2d Cir. 2016), the court assessed a claim that officers entered the plaintiff's home late at night "under false pretenses," terrified his children, and "took [him] away under arrest," all "because [he had] stood up for his constitutional right to have the police obtain a warrant to search his home."  Lawson, 88 F.Supp.3d at 101.  Since "[a] reasonable jury could [have] conclude[d] that the police engaged in outrageous conduct intended to inflict emotional distress on the [plaintiff's] family," the court denied defendants' Motion for Summary Judgement.  Id. at 101-02; see also Zadrowski v. Town of Plainville, No. 3:09-CV-1367, 2013 WL 5435491, at *12 (D. Conn. Sept. 30, 2013) (finding disputed issues of material fact and denying a Motion for Summary Judgement because "[c]rediting the [p]laintiff's account, [the defendant] aggressively and intentionally put the [p]laintiff in an unnecessary and painful chokehold.  This is conduct that could reasonably be judged 'extreme and outrageous'"); Balogh v. City of Shelton, No. 99-0067521-S, 2002 WL 523225, at *7 (Conn. Super. Ct. Mar. 18, 2002) (denying a Motion for Summary Judgement by reasoning that if plaintiff could establish facts to a jury showing that defendants had arrested her without probable cause, used excessive force while doing so, "and erroneously represent[ed] in the police report that [she] was intoxicated and had made certain inculpatory statements," the "jury could reasonably find that the police officers engaged in an extreme abuse of their authority in a way which is intolerable in a civilized society").

For these reasons, the court finds that plaintiffs' allegations are sufficient to state a claim against the defendant officers for intentional infliction of emotional distress.  The Motion to Dismiss, therefore, is denied as to Count Five of the Complaint.

7.      Negligent Infliction of Emotional Distress

Finally, plaintiffs also bring a claim for negligent infliction of emotional distress against the defendant officers.  Defendants counter by arguing that such a claim is "barred by the doctrine of governmental immunity" because "municipalities and their employees or agents have immunity from negligence liability for governmental acts involving . . . discretion."  Defs.' Mem. at 19 (quotations and citations omitted).  Plaintiffs do not dispute that defendants are immune from negligence claims if their actions were discretionary; instead, they argue that "the acts of the Defendant Officers . . . were ministerial in nature, as they were performed in a prescribed nature without the exercise of judgment or discretion."  Pls.' Mem. at 11.

"Under common law in Connecticut, 'barring the possible application of an exception, both municipalities and their employees or agents have immunity from negligence liability for governmental acts involving the exercise of judgment or discretion.'" Chase, 360 F.Supp.3d at 119 (quoting Elliott v. City of Waterbury, 245 Conn. 385, 411 (1998)).  While municipal employees are generally immune from negligence claims for discretionary acts, they can be "liable for the misperformance of ministerial acts.  Violano v. Fernandez, 280 Conn. 310, 318 (2006) (emphasis added) (internal quotations and citations omitted).  "The hallmark of a discretionary act is that it requires the exercise of judgment . . . In contrast, [m]inisterial refers to a duty which is to be performed in a prescribed manner without the exercise of judgment of discretion." Id. (internal quotations and citations omitted).

Here, plaintiffs argue that the alleged actions of the defendant officers – which neither party disputes are sufficient to state a claim for a violation of their Fourth Amendment rights – were ministerial in nature.  They argue, in essence, that Chief Sansom's "fail[ure] to train and/or discipline" the officers translated to a duty on the part of the officers to, in a prescribed manner, violate the Fourth Amendment rights of the plaintiffs.

This argument collapses upon scrutiny.  A failure to train police officers and prescribe practices to ensure they do not violate the constitutional rights of arrestees would, if anything, support an inference that the officers had <u>more</u> discretion in carrying out an arrest than they would have otherwise.  Moreover, as defendants point out, "under Connecticut law, officers' investigation of crimes and their decisions to make arrests . . . are clearly discretionary rather than [ ] ministerial function[s]."  Defs.' Mem. at 20 (citations omitted); <u>see, e.g.</u> <u>Gordon v. Bridgeport Housing Auth.</u>, 208 Conn. 161, 180 (1988) (holding that "plaintiff's claims [ran] counter to the great weight of authority that the operation of a police department is a discretionary governmental function"); <u>Henderson v. Williams</u>, No. 3:10-CV-01574, 2013 WL 2149698 (D. Conn May 16, 2013) ("[h]ere, the alleged negligent conduct – the [Police Department and Detective's] investigation and arrest of Plaintiff – was discretionary, and [defendants] are therefore immune from any negligence claims"); <u>Beaubien v. City of Middletown</u>, No. MMXCV106002059S, 2012 WL 3854060, at *3 (Conn. Super. Ct. Aug. 1, 2012) ("[t]he Superior Courts also have consistently held that the police department's . . . decisions to make arrests . . . are clearly a discretionary rather than ministerial function").

Defendant officers are therefore immune from plaintiffs' negligent infliction of emotional distress claim.

The Motion to Dismiss is granted as to Count Six of the Complaint. The court dismisses Count Six as to all defendants, without prejudice to replead if plaintiffs can allege facts supporting a negligent infliction of emotional distress claim.

      D.    Qualified Immunity

Defendants' Motion to Dismiss has thus far been granted as to each claim except for plaintiffs' Count One section 1983 claim for a Fourth Amendment violation and their Count Five claim for Intentional Infliction of Emotional Distress.  Defendants argue that the remaining Count One claim should be dismissed because they are entitled to qualified immunity.  Defs.' Mem. at 23-25.[7]

Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Qualified immunity should be denied only if (1) the facts alleged or shown by the plaintiff state a violation of a statutory or constitutional right by the official and (2) that right was clearly established at the time of the challenged conduct.  Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011) (citation omitted).

---

[7] In the pages cited here, defendants argue that Counts One, Two, and Three should all be dismissed because defendants are entitled to qualified immunity.  In their reply brief, defendants supplement their qualified immunity arguments as to the Count One section 1983 Sixth Amendment claim.  Since the court has already dismissed that claim, as well as Counts Two and Three, it addresses defendants' argument regarding qualified immunity here only as it relates to the remaining section 1983 Fourth Amendment claim.

Defendants hinge their qualified immunity argument, as it relates to the surviving section 1983 Fourth Amendment claim relevant here, entirely on the first prong of the test.  Defs.' Mem. at 23-24 ("[b]ased upon the fact that the defendants cannot be found liable for any alleged statutory and/or constitutional violations, [defendants] are entitled to qualified immunity").  Yet elsewhere in their Memorandum, they concede that plaintiffs' Fourth Amendment claim alleges a plausible claim for relief.  Id. at 7.  They argue instead that they cannot be held liable for a violation of plaintiffs' Fourth Amendment rights because the Complaint failed to allege sufficient personal involvement by the defendants.

The court has already addressed the "group pleading" issue above and denied the Motion to Dismiss as to that argument.  Defendants have not put forth any other reason that plaintiffs' Fourth Amendment claim should be dismissed, nor have they argued that the second prong of the qualified immunity test is not met because the right in question was not clearly established at the time of the officers' conduct.  Id. at 23-25. Accordingly, based on the arguments they raise, defendants are not entitled to qualified immunity at this stage.

The Motion to Dismiss is denied as to defendants' argument that the section 1983 claim for a Fourth Amendment violation in Count One of the Complaint should be dismissed because the defendant officers are entitled to qualified immunity.

V.     **CONCLUSION**

For the reasons stated above, the Motion to Dismiss is GRANTED as to the Count One section 1983 Sixth Amendment claim against defendants Caruso, Kaplan, Meucci, and Castagna in both their individual and official capacities; the Count Two Monell claim against defendant Sansom, in both his individual and his official capacity,

28

and defendant Town of East Hartford; the Count Three Equal Protection claim against defendants Caruso, Kaplan, Meucci, and Castagna in both their individual and official capacities; the Count Four Article First, § 1 and Article First, § 20 of the Connecticut Constitution claims against defendants Caruso, Kaplan, Meucci, and Castagna in both their individual and official capacities; and the Count Six Negligent Infliction of Emotional Distress claim against defendants Caruso, Kaplan, Meucci, and Castagna in both their individual and official capacities.

The Motion to Dismiss is DENIED as to the Count One section 1983 Fourth Amendment claim against defendants Caruso, Kaplan, Meucci, and Castagna in both their individual and official capacities; and the Count Five Intentional Infliction of Emotional Distress claim against defendants Caruso, Kaplan, Meucci, and Castagna in both their individual and official capacities.

All claims, with the exception of the Count Four Article First, § 1 claim, are dismissed without prejudice. If plaintiffs choose to replead, they must file an amended complaint within **14** days.

**SO ORDERED.**

Dated at New Haven, Connecticut this 30th day of July 2021.

/s/ Janet C. Hall _____
Janet C. Hall
United States District Judge